UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES WILLIAM BANEY,

                    Plaintiff,

v.

LES PARISH et al.,

                    Defendants.

_____/

Case No. 1:20-cv-992

Honorable Robert J. Jonker

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

       Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues MDOC Director Heidi

Washington and the following ECF officials:  Warden Les Parish; Correctional Officers Unknown Sisson, Unknown Mayhew, and Unknown Bostwick; and Prisoner Counselor Unknown Holden.

Plaintiff's complaint consists of a "diary" of alleged incidents that occurred between August 17, 2020, and September 21, 2020.  (Compl., ECF No. 1, PageID.5.)  The incidents consist of a litany of Plaintiff's somewhat paranoid reactions to ordinary events at the prison.

Prior to the incidents from which Plaintiff seeks relief, on July 20, 2020, Plaintiff was issued a Class-III misconduct ticket by Officer Wert (not a defendant)  Plaintiff makes a conclusory allegation that Defendant Mayhew instructed Wert to issue the misconduct.  Plaintiff also alleges that the sanction on the misconduct was 15 days' loss of privileges, which Plaintiff considered was excessive.

On August 17, 2020, Defendant Mayhew did not open Plaintiff's cell door for food-tray pickup.  Plaintiff pushed his emergency button repeatedly for more than 9 minutes, even after Defendant Mayhew instructed Plaintiff over the loud speaker to stop.  Officer Johnson (not a defendant) eventually came to Plaintiff's cell and told him that Defendant Mayhew did not want to open Plaintiff's door, because he heard inmates make threatening remarks.  Plaintiff alleges that threatening remarks were made (he heard prisoner Ortize call him a rat), but he did not believe that he was in danger because Ortize was unlikely to jeopardize his imminent parole by attacking Plaintiff.  At 7:00 p.m., Plaintiff handed his food tray to the "tablet porter," who was picking up computer tablets.  Officer Wert told the porter to tell Plaintiff to get rid of his tray during med-line callout.  The officers, however, did not let Plaintiff out of his cell for med line.

Plaintiff contends that Defendant Mayhew has been "retaliating" ever since August 17, 2020, though he neither identifies the reason for the alleged retaliation nor clearly states what

adverse action Mayhew took against Plaintiff.  Plaintiff states that Mayhew talked to prisoners over the public address system as if they were mentally challenged children.  Mayhew also opened Plaintiff's cell door for med line, despite Plaintiff not asking to go to med line by hitting his light. In addition, various inmates slammed Plaintiff's window flap and hit Plaintiff's cell door when they passed and called Plaintiff names, in an attempt to get Plaintiff moved.  Counselor Holden announced that inmates would be given a Class-II ticket for opening or closing food-tray or window flaps.

On September 1, 2020, Defendant Mayhew "shook down" or searched Plaintiff's cell.  Mayhew took Plaintiff's glasses, which had been broken earlier in the year and repaired with tape and wire, as contraband.  Plaintiff received a ticket, resulting in three days' loss of privileges. Plaintiff had been trying to get the glasses repaired, and he eventually received a notification that the prisoner benefit fund would not pay for the glasses until Plaintiff had enough money in his account.  Plaintiff complained that he should not have to pay at all, and, if they had repaired the glasses, he would never have received a ticket from Defendant Mayhew.

On September 9, 2020, Officer McGlowing (not a defendant) shook down Plaintiff's cell.  Later that same day, Defendant Mayhew shook down Plaintiff's cell.  Plaintiff left the day room to complain, but Officer Wert sent him back to the day room.  Wert then walked over to Defendant Mayhew.  Plaintiff became suspicious that Defendant Mayhew intended to plant a weapon or drugs in Plaintiff's cell.  Plaintiff called his son and told him to call the warden or sergeant before 4:00 p.m. to let them know that Plaintiff believed he was being set up.  Plaintiff contends that, after Mayhew left Plaintiff's cell, he kept his eye on Plaintiff.  Plaintiff wished to write a kite to the prisoner counselor, but, rather than putting it in the box, he wanted to slip it under her door so that she would get it right away.  However, Defendant Mayhew remained in a

position that would allow him to observe Plaintiff delivering the kite.  The following morning, when Plaintiff saw Defendant Holden get the kites out of her box, he asked to talk to her.  She responded by asking if it was about the officers shaking down his cell.  Plaintiff asked how she knew, and Holden responded that the officers had told her.

The following day, September 10, Defendant Holden told Plaintiff to stop writing kites and having his family call the facility.  She advised Plaintiff that Defendant Mayhew was just doing his job and that, if he continued, he would have to be moved. Plaintiff states that he sent a kite to Defendant Washington on September 10 or 11, complaining "about Officer Mayhew[']s actions towards a[n] inmate and actions over P.A. while on second 2nd shift."  (*Id.*)  Plaintiff alleges that he did not sign the letter, but Defendant Washington must have told Defendant Holden. Holden must have known about it, because he told Plaintiff to stop writing kites.  Plaintiff told Holden that he spent every day thinking about getting home to his 93-year-old mother and that he believed that Defendant Mayhew was trying to screw up his chance for parole by setting him up with a weapon or something.  Defendant Holden reacted as if Plaintiff had admitted that he had something in his cell.

Also on September 10, second-shift Officer Marshall (not a defendant) shook down Plaintiff's cell.  Plaintiff complained that his cell was always being searched.

That afternoon, Plaintiff again called his son to see if he had talked with anyone at the prison.  Plaintiff's son responded that he had and that some woman had called him earlier and left a message on his phone.  Plaintiff asked if his son had the message on a recording and directed his son to put it on a compact disc, because the counselor was not allowed to call anyone in his family other than an emergency contact.  Plaintiff alleges that both Washington and Holden

violated prison rules by communicating about him and responding to his son's calls, when his son was not his emergency contact.

According to the complaint, Officer Donald (not a defendant) shook down Plaintiff's cell on September 17, 2020, at 7:00 p.m.  Officer Cabot (not a defendant) shook down the cell on September 18 at 9:48 a.m.  On September 20, Officer Patrik (not a defendant) shook down Plaintiff's cell at approximately 10:00 a.m. and confiscated Plaintiff's koolaid and baggies, with the exception of one baggie containing half of a candy bar and one containing some bread. Patrik instructed Plaintiff that he could either throw out the koolaid or get a ticket.  Plaintiff threw out the koolaid.  He then asked why his cell had been searched eight times in 20 days, and Patrik responded, "[I]s that all[?]"  (Compl., ECF No. 1, PageID.11.)  Plaintiff alleges that having koolaid does not violate the rules.  He believes that the searches are harassment and that Defendant Mayhew is responsible.  He believes that Mayhew talks with him in a degrading fashion.  He also believes that Patrick will return to Plaintiff's cell to get the last baggies.

On September 20, 2020, Plaintiff went to the med line.  On his way back, he stopped to fill his cup at the drinking fountain.  Defendant Mayhew announced on the loud speaker that no one should stop at the drinking fountain.  Plaintiff complained that the restriction was not consistent with the rules, because med lines are not mass movements.  Five minutes later, Defendant Mayhew came to Plaintiff's cell door and asked if Plaintiff had called him a bitch. Plaintiff denied using the language.  Plaintiff alleges that Defendant Bostwick was outside the bubble when Plaintiff returned to his cell.  Plaintiff concludes that Defendant Bostwick must have lied to Defendant Mayhew about what Plaintiff said.  According to Plaintiff, other inmates on the med line told him that Defendant Bostwick made the following statement as he passed Plaintiff's

cell: "[W]hy don't you have your mother call here another 500 times." (*Id.*, PageID.13.)  Plaintiff contends that Bostwick's statement degraded him.

Plaintiff alleges that the lie began a new pattern of harassment.  He claims that he suffered an anxiety attack because he feared getting a misconduct ticket that would prevent him from watching a Tom Petty program on television the he had been anticipating.  Plaintiff complains that prison cameras do not provide sufficient protection for prisoners.

On September 21, Plaintiff searched his own cell, without success, to see if officers may have planted a weapon or drugs.  On September 22, Officer Lowing (not a defendant) shook down Plaintiff's cell.

Plaintiff alleges that he has suffered extreme anxiety and stress.  He seeks an injunction barring further harassment and punishment.  He also seeks $2.5 million in net damages after attorney fees and costs.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

6

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Violations of prison policy

Plaintiff alleges that Defendants Holden and Washington violated prison policy by communicating about Plaintiff and returning calls to Plaintiff's son, who was not an authorized contact.[1]

Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of constitutional violations. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954

---

[1] He alleges that Officer Patrik, who is not a defendant, violated prison policy by instructing Plaintiff to throw out his koolaid.

7

F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580–81.

### IV.    Lack of allegations and supervisory liability

Plaintiff makes no allegations against Defendants Sisson and Parish.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally

devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Sisson and Parish in the body of his complaint. His allegations therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

In addition, beyond the allegation that Defendant Washington violated an unspecified prison policy, which the Court already has held fails to state a § 1983 claim, Plaintiff fails to make specific factual allegations against her. He merely attempts to hold Defendant Washington liable for failing to supervise her employees.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

## V.   Eighth Amendment

Plaintiff alleges that he has been subjected to unconstitutional punishment by Defendants Mayhew and Bostwick, in the form of verbal harassment and degrading comments, resulting in psychological injury.  Even assuming that the language alleged by Plaintiff constitutes verbal harassment, it falls well short of stating an Eighth Amendment claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834;

*Helling*, 509 U.S. at 35–37.   To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.   "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.   "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.");  *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a

11

corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Mayhew and Bostwick arising from their alleged verbal abuse.

Moreover, absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, his Eighth Amendment claim for emotional damages is barred.

For both reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Mayhew and Bostwick.

## VI. Retaliation

Plaintiff alleges that Defendant Mayhew engaged in a pattern of retaliation against Plaintiff, by using degrading and harassing language, by not collecting Plaintiff's food tray on one occasion, and by permitting or directing multiple searches of Plaintiff's cell. Plaintiff alleges that Defendant Bostwick retaliated against him by making passing comments about the multiple phone calls Plaintiff's mother and brother had made to the prison. Plaintiff also appears to allege that Defendant Holden engaged in retaliation by counseling him to ask his family to stop calling the facility, indicating that Plaintiff was at risk of being transferred.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

12

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claims against Defendants Mayhew, Bostwick, and Holden fail at the first step. The filing of a nonfrivolous prison grievance—whether written or oral—is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, however, utterly fails to allege that he made any verbal or written grievance or complaint or that he engaged in any other form of protected conduct prior to the allegedly retaliatory actions of Defendants Mayhew and Bostwick. With respect to Defendant Mayhew, Plaintiff fails to identify any precipitating exercise of his First Amendment rights. With respect to Defendant Bostwick, Plaintiff alleges no more than that Bostwick made a negative remark to Plaintiff about the calls made by Plaintiff's family members—not Plaintiff himself—to complain about Plaintiff's alleged mistreatment. Similarly, Plaintiff's allegation against Defendant Holden alleged retaliation based on the calls made by Plaintiff's family members. In all of these circumstances, Plaintiff fails to allege that he himself was engaged in protected conduct. As a result, Plaintiff fails to state a retaliation claim.

Even had Plaintiff alleged protected conduct, his allegations fail to demonstrate that any Defendant took action that was adverse within the meaning of the retaliation standard.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff alleges that Defendant Bostwick made a snide comment in passing about the many calls from Plaintiff's family.  In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action.  Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'"  *Thaddeus-X*, 175 F.3d at 398–99 (citing *Bart*, 677 F.2d at 625).  Here, Plaintiff alleges that Defendant Bostwick made a snide comment about Plaintiff's mother's many telephone calls to the prison.  Such a comment falls far short of the sort of action that would deter a person of ordinary firmness from exercising any right.

Similarly, Defendant Holden's remark that Plaintiff might be transferred does not even rise to the level of a threat, much less a serious threat.  Considering Holden's comment to be adverse action unquestionably would "trivialize the First Amendment." *Id.*

With respect to Defendant Mayhew, Plaintiff alleges nothing more than that Mayhew refused to open his cell (and take his food tray) on one occasion, used language that

Plaintiff deemed demeaning when speaking over the loudspeaker, and conducted one search of Plaintiff's cell.[2]  None of the cited episodes of conduct rises to the level of adverse action.

A cell search may, in some circumstances, be sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*.  *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (concluding that harassing or destructive cell searches, together with the confiscation of legal materials, is sufficiently adverse) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)),  In the instant case, however, Plaintiff alleges no circumstances that would raise a single cell search to the level of adverse action.  Plaintiff does not contend that Defendant Mayhew conducted a destructive search or confiscated any property.  Moreover, notwithstanding Plaintiff's allegations about what he feared Mayhew would do, Mayhew never planted any sort of contraband in Plaintiff's cell.

Further, as with Defendant Bostwick, Defendant Mayhew's use of language that Plaintiff found degrading (because Defendant Mayhew spoke to prisoners as if they were children) falls well short of adverse action.  Even assuming that speaking to prisoners as if they were children constitutes harassment, such harassment is minor.  Minor harassment is insufficient to constitute adverse action.  *Thaddeus-X*, 175 F.3d at 398–99.

Moreover, the refusal to open Plaintiff's door to take a food tray on a single occasion falls well short of conduct that may be deemed adverse.  *See Turner v. Gilbertson*, No. 2:17-cv-65, 2017 WL 1457051, at *9 (W.D. Mich. Apr. 25, 2017) (holding that denial of crackers and refusal to pick up a dinner tray fall short of adverse action).

---

[2] Plaintiff alleges that his cell was searched eight times in twenty days by various correctional officers.  Plaintiff alleges no facts, however, that would suggest that Defendant Mayhew was responsible for those searches.

For the stated reasons, Plaintiff's allegations against Defendants Mayhew, Bostwick, and Holden fail to state a retaliation claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __February 23, 2021__          /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE